The following constitutes the
Memorandum Decision of the Court.
Signed December 10, 2013

Roger L. Efremsky
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re | ) Bankruptcy Case |
| MARIO M.S.B. FEUSIER, | ) No. 12-42005 |
| | ) |
| | ) Chapter 7 |
| | ) |
| Debtor. | ) |
| ———————————————— | ) |
| | ) Adversary Proceeding |
| AUGUST B. LANDIS, Acting, | ) No.12-4178 |
| United States Trustee | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| MARIO M.S.B. FEUSIER, | ) |
| | ) |
| Defendant. | ) |
| ———————————————— | ) |

**MEMORANDUM DECISION ON UNITED STATES TRUSTEE'S MOTION FOR TERMINATING SANCTIONS**

*12-4178.Decision*                          -1-

**I. Introduction**

Before the court is the motion by the United States Trustee (the "UST") for terminating sanctions and an award of attorney's fees against defendant Mario M.S.B. Feusier ("Defendant" or "Debtor"). The matter has been fully briefed and argued.

For the reasons explained below, the court now grants the relief requested by the UST.

**II. Procedural History**

    **A. Prior Cases**

The court takes judicial notice of the fact that before filing this case, Defendant had filed the following cases:

    **1. 07-42255 lt 13** - 7/20/07 - 9/26/07. The case was filed pro se but an attorney later substituted in. The attorney asked for, and was given more time, but the case was dismissed on the chapter 13 trustee's motion for failure to file the documents required by § 521(a)(1) (the "Required Documents") after the extended time had run. Defendant did not appear at the § 341 meeting.[1]

    **2. 07-43244 edj 13** - 10/3/07 - 11/28/07. The case was filed pro se. Debtor requested and was given more time to file the Required Documents but the case was dismissed for failure to file them after the extended time had run. Debtor was not examined at the § 341 meeting.

    **3. 08-40048 edj 13** - 1/4/08 - 3/10/08. This case was

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

Case: 12-04178   Doc# 61   Filed: 12/10/13   Entered: 12/10/13 17:31:34   Page 2 of 25

also filed pro se. The chapter 13 trustee moved to dismiss "with prejudice" for failure to file Required Documents and for bad faith. Debtor filed an opposition to the chapter 13 trustee's motion, arguing that he was not acting in bad faith, but was the victim of the general decline in the economy. After the hearing, the case was dismissed "with prejudice" as requested by the chapter 13 trustee. None of the Required Documents were ever filed.

**4. 08-42469 lt 13** - 5/19/08 - 7/1/08. This case was also filed pro se, and was dismissed on the chapter 13 trustee's motion before the § 341 meeting was held based on Debtor's failure to file the Required Documents.

**5. 08-44953 rn 13** - 9/8/08 - 12/11/08. This case was also filed pro se without the Required Documents. Debtor failed to appear at the § 341 meeting and the case was dismissed "with prejudice" and with a two-year bar to refiling on the chapter 13 trustee's motion on grounds of bad faith. Debtor appeared and argued at the hearing on the trustee's motion but did not file an opposition.

**6. 09-48645 edj 11** - 9/15/09 - 9/17/09. This case was also filed pro se, and *some* of the Required Documents were filed. For this case, Debtor used petition preparer Ransome McKissick. The case was dismissed because of the two-year bar ordered in the previous case.

**7. 10-47885 lt 11** - Beverly Anne Feusier. 7/13/10 - 12/15/10, converted to chapter 7; discharge entered 7/28/11; closed 1/11/12. While the two-year bar to refiling prevented Defendant from filing another case, his wife Beverly Anne

*12-4178.Decision* -3-

Feusier, acting pro se, filed a chapter 11 case.

At the initial § 341 meeting, Beverly Feusier admitted that the schedules and statement of financial affairs had been filled out by Defendant and that she had not read them before they were filed. The § 341 meeting was then continued several times and, through counsel, Beverly Feusier filed amended schedules and an amended statement of financial affairs to address omissions brought to light by the UST's questioning. Subsequently, the UST moved to convert the case or appoint a chapter 11 trustee, arguing that cause existed under § 1112(b)(4) because Beverly Feusier had filed the case in bad faith, had grossly mismanaged the estate, had used cash collateral without permission, and had not provided information requested by the UST (i.e., proof of insurance, bank statements, proof of filing tax returns). The court granted the UST's motion.

**B. The Present Case**

Defendant filed this chapter 7 case on March 5, 2012. This is, in effect, his eighth bankruptcy case since 2007. He is represented by counsel Jan Van Dusen, who signed the petition. However, Van Dusen has admitted that petition preparer Ransome McKissick actually prepared the schedules and statement of financial affairs and she did not review them with Defendant before they were filed.[2] Over the next thirteen months, Defendant amended his schedules and statement of financial affairs multiple times. See docket nos. 18, 53, 86, 89 and 92.

---

[2] See docket nos. 87-88. Counsel thus admits to violating her duties under § 707(b)(4)(C) and (D) and § 526(a)(2).

Defendant's original schedule A listed an over-encumbered principal residence in Martinez, an over-encumbered rental property in Berkeley, an over-encumbered rental property in Livermore, unencumbered raw land in Utah valued at $5,000 and unencumbered raw land in Siskiyou County valued at $5,000.[3] Defendant did not list ownership of any business interests on schedule B. His original schedules I and J said he was a "real estate consultant" employed for the previous twelve years at "Preferred Real Estate" and described his spouse as retired. He claimed to have combined average projected monthly earnings of $13,950 from various sources including operation of a business, rents, and a pension.

Defendant's schedule J also claimed he was making payments of $7,785 per month for rent or home mortgage plus other installment payments totaling $15,471 per month for taxes, insurance and debt service on the Martinez, Livermore, and Berkeley properties.[4]

---

[3] These two properties had been valued at $200,000 and $75,000, respectively, in the Beverly Feusier case. See docket no. 25, p. 3 in 10-47885.

[4] Secured creditors contradict this. Relief from stay motions filed by the holders of first deeds of trust on the Martinez and Berkeley properties in June and July 2012 alleged pre-petition defaults of 63 months. See docket nos. 36 and 45. A relief from stay motion by the holder of the first deed of trust on the Berkeley property in the ch. 7 case of Trans Pacific Capital Assets Group LLC - one of defendant's business entities - alleged that on the same day that the ch. 7 case was filed, Defendant recorded a grant deed transferring a 20% interest to Trans Pacific and that there had been no payments for 71 months. See docket no. 23 in 12-49430. Based on a previous schedule I, Defendant had net rental income of $13,500/month from the Berkeley property. See docket no. 1, p. 18 in 09-48645.

Case: 12-04178   Doc# 61   Filed: 12/10/13   Entered: 12/10/13 17:31:34   Page 5 of 25

Defendant filed an amended schedule B on July 20, 2012 (four months after the case was filed). See docket no. 53. In this amended schedule B, he listed for the first time in answer to question no. 35 his interests in the following businesses: (1) Trans Pacific Capital Assets Group, LLC, "directors" are Debtor and David Sandhu ("Trans Pacific"); (2) Nationwide Home Loan Solutions Corp. ("Nationwide")- 50% ownership with son, Debtor is sole director, secretary, treasurer; (3) Preferred Homes & Loans - dba of Nationwide; (4) Preferred Design & Development - dba of Debtor; (5) Preferred Real Estate Services - dba of Debtor; and (6) Lender's Northstar Mortgage Group, Inc. - "closed corporation that was wholly owned by Debtor" (collectively, the "Business Entities").

Defendant filed another amended schedule B on April 3, 2013. See docket no. 86. He and his counsel also filed declarations to explain the amendments. See docket nos. 87-88. These declarations claim that all omissions in the schedules and statement of financial affairs were inadvertent and blamed any inaccuracies on the petition preparer Ransome McKissick, on the "emergency" nature of the filing, and on the fact that Van Dusen was inexperienced as a bankruptcy attorney - this was her first ch. 7 case - and she was not familiar with the software or the e-filing system and her "criminal matter" was taking up her time. Van Dusen's declaration admits she did "not actually review the paperwork" with Defendant before it was filed because she "was jammed with other work" and had been too busy to file amended schedules since the chapter 7 trustee's Rule 2004 exam - a period the court estimates to have been at least 8 months. Nevertheless,

Case: 12-04178    Doc# 61    Filed: 12/10/13    Entered: 12/10/13 17:31:34    Page 6 of 25

she insists there was no intent to omit anything and claims neither she nor Defendant had been aware of the inaccuracies and omissions in the schedules and statement of financial affairs until the Rule 2004 exam.

Because there have been so many iterations of the schedules and statement of financial affairs, the court has no confidence that they are complete, accurate, or honest. The self-serving declarations filed in April 2013 only serve to further undermine Defendant's credibility and do nothing to excuse counsel's dereliction. See In re Kayne, 453 B.R. 372 (9th Cir. BAP 2011) (debtor's attorney sanctioned pursuant to § 707(b)(4)(D) and Rule 9011 for failing to make objectively reasonable investigation of facts underlying schedules and statement of financial affairs).

**C. The § 727 Adversary Proceeding**

On August 27, 2012, the UST filed this adversary proceeding, stating claims under § 727(a)(4), § 727(a)(5), and § 727(a)(7). See docket no. 1.

The § 727(a)(4) false oath claim alleges, inter alia, that Defendant knowingly and fraudulently failed to disclose his interest in the Business Entities on schedule B, failed to list his ownership of 4 cars until the day before the § 341 meeting, failed to list his spouse of forty years on the statement of financial affairs or list her as a co-debtor on schedule H, and failed to list any leases or executory contracts on schedule G even though he identified the Berkeley and Livermore Properties as rental properties.

The § 727(a)(5) claim alleges, inter alia, that Defendant failed to satisfactorily explain what he or the Business Entities

Case: 12-04178   Doc# 61   Filed: 12/10/13   Entered: 12/10/13 17:31:34   Page 7 of 25

did with the $500,000 investment made by U.S. Capital Network, LLC ("U.S. Capital") in Trans Pacific,[5] failed to account for his income in this case and in the Beverly Feusier case, and failed to explain the loss of assets or deficiency of assets to meet his or his related entities' liabilities.

The § 727(a)(7) false oath claim alleges Defendant failed to disclose matters and failed to list correct income and expenses on schedules I and J in the Beverly Feusier case.

The UST's complaint also asks the court to dismiss this case with prejudice and impose a five-year bar to refiling. Defendant filed an answer which denies certain allegations and admits others. See docket no. 5.

### 1. Discovery

#### a. Interrogatories

The UST's first set of twenty interrogatories contained explicit instructions and definitions. The time-frame for the interrogatories was generally defined as January 1, 2007 to the present which roughly corresponds to the time-frame for the information to be provided in the statement of financial affairs.[6] Each of the UST's questions was designed to elicit

---

[5] See AP 12-4122 filed by U.S. Capital alleging non-dischargeability under § 523(a) regarding $500,000 investment. Trial is scheduled in state court in March 2014.

[6] See definition in statement of financial affairs: an individual debtor is "in business" for purposes of this form, if the debtor is or has been within *six years* immediately preceding the filing of the case, any of the following: an officer, director, managing executive, or owner of 5% or more of the voting securities of a corporation, a partner of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be [footnote continued]

Case: 12-04178   Doc# 61   Filed: 12/10/13   Entered: 12/10/13 17:31:34   Page 8 of 25

facts needed to prove the § 727 claims.

The UST also asked Defendant to identify professional licenses held, revoked, or relinquished between 1990 and the present, to identify all facts supporting Defendant's denial of certain paragraphs of the complaint, to identify the bank accounts held in the names of the Business Entities, to identify all entities in which he had an interest, to identify all facts regarding the $500,000 invested by U.S. Capital, to identify facts regarding Defendant's failures to disclose certain facts in the Beverly Feusier case, and facts regarding Defendant's failure to completely and accurately account for his income in this case and the Beverly Feusier case.

Defendant objected to the interrogatories on the grounds that they were overly broad, burdensome and oppressive, and requested irrelevant information. Taking a more bizarre turn, the objection also stated: "Responding Party further objects that the Propounding Party has knowingly violated Rule 1-120 and other rules of California Rules of Professional Conduct by acting on information provided by Responding Party's former attorneys. Responding Party further objects that the Propounding Party is violating the U.S. Constitution by utilizing resources of the United States Trustee to prosecute this adversary proceeding against Responding Party, a private citizen, on behalf of other

_____

"in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment. Question no. 1 asks for gross income received during the two years immediately preceding the calendar year in which the case is filed.

Case: 12-04178   Doc# 61   Filed: 12/10/13   Entered: 12/10/13 17:31:34   Page 9 of 25

private citizens (who have already sued Responding Party civilly which lawsuits have been either tried (Zelis) or settled (U.S Capital Network),[7] or are currently pending (Fischer))." The response to many of the interrogatories also claimed that the questions had been asked "for harassment purposes" or had been answered at the Rule 2004 exam. <u>See</u> docket no. 15-2, ex. 2.

### b. Request for Production of Documents

The UST's request for production of documents began with typical clear instructions and, like the interrogatories, defined a relevant time-frame that corresponded to the information required by the statement of financial affairs - January 1, 2007 to the date of production. <u>See</u> docket no. 15-5.

The UST sought documents regarding the incorporation or creation of the Business Entities, documents relating to the Business Entities' bank accounts for only the year prior to filing this case or the last year for which an account existed, tax returns for Defendant and the Business Entities, contracts between Defendant or the Business Entities he controlled regarding the investment by U.S. Capital and its return on investment, documents regarding income received by Defendant and the Business Entities, and Defendant's and the Business Entities's ownership of automobiles.

After meeting and conferring with the UST on May 30, 2013, Defendant provided a first amended response to the request for production of documents but did not produce any documents. The

_____

[7] The U.S. Capital lawsuit is not settled according to the joint status report filed on October 29, 2013. <u>See</u> docket no. 32 in AP 12-4122.

*12-4178.Decision*                    -10-

first amended response began with a boilerplate objection similar to the one in the interrogatory response - vague, ambiguous, overly broad and burdensome, irrelevant - and included the same allegations that the UST was improperly assisting private citizens and thus violating the due process clause of the U.S. Constitution. It also claimed that the documents produced "would almost certainly be turned over to those private individuals on whose behalf the UST appears to be acting." <u>See</u> docket no. 15-2, ex. 1.

Defendant offered to produce corporate or fictitious business name documents filed or updated within one year before March 5, 2012 for the Business Entities.[8] He offered to produce his personal bank statements and the Business Entities' bank statements for the one-year time period as requested by the UST. Defendant offered to produce certain excerpts from his tax returns for the same one-year period. His objection also tried to limit the time period for the U.S. Capital documents to this one-year period and again accused the UST of trying to interfere in state court litigation regarding U.S. Capital. No documents were produced.

### 2. The UST's Motion to Compel

On June 25, 2013, the UST filed and served its motion to compel responses to its discovery requests. <u>See</u> docket no. 15. The motion explained that the UST had met and conferred in person with Defendant's attorney on May 30, 2013 as a result of which

---

[8] There is no explanation for the choice of this time period as opposed to the one defined by the UST - January 1, 2007 to the date of production.

Case: 12-04178   Doc# 61   Filed: 12/10/13   Entered: 12/10/13 17:31:34   Page 11 of 25

Defendant had agreed to provide an amended response to the request for production of documents, provide documents, and further respond to interrogatories by June 5, 2013. Despite this agreement, no documents had been produced, no amended interrogatory answers had been provided, and the UST had only been given an amended response to the request for production of documents (one day late).

Defendant's counsel did not file any opposition to the motion to compel and did not appear at the hearing on July 24, 2013. Because the UST's discovery requests were appropriate and the Defendant's objections were groundless, the court entered an order granting the motion (the "July 24 Order"). <u>See</u> docket no. 23. Defendant's attorney was served with the July 24 Order which said: "The motion to compel is hereby granted in full. Defendants [sic] shall produce the documents requested, reply to requests for admissions, and answer interrogatories propounded by the U.S. Trustee no later than August 21, 2013. If complete responses are not received, the Court will entertain a motion by the U.S. Trustee for fees and terminating sanctions."

### 3. Defendant's Motion to Vacate

On July 31, 2013, Defendant filed and served a motion to set aside the July 24 Order. <u>See</u> docket no. 27. The motion referred to Civil Rules 60(b)(1) and 60(b)(6) as justifying the relief requested but developed no argument regarding application of these Rules. The motion claimed that the July 24 Order "was noticed and obtained while counsel for the Defendant was herself either imminently preparing for trial or actually in trial on a

criminal matter."[9] The motion admitted that counsel had "failed
to notice the date of the hearing" on the motion, and missed
"responding to oppose [sic] due to the demands of [counsel's own]
criminal matter. Counsel would have been unable to appear at the
hearing in any case, as it took place during [counsel's own]
criminal trial proceedings."

The motion also argued that Defendant should not be
penalized and his "valid objections to improper discovery
demands" should not be jeopardized because of counsel's
"misfortune and inability to respond" to the motion. Counsel
urged the court to find that "the press of [counsel's personal]
criminal trial with all of the various substantial threats"
constituted "mistake, inadvertence, surprise, or excusable
neglect," or "that this situation would justify relief" under
Civil Rule 60(b)(6) on "grounds of fairness to the client."

Defendant's motion was set for hearing on September 18,
2013. Defendant did not ask for a stay of the July 24 Order
pending the hearing on this motion.[10]

The UST opposed the motion to vacate, arguing that there
were no grounds to set aside the July 24 Order because there was
no excusable neglect and an attorney can not abandon clients for

_____

[9] The court assumes counsel here meant *on* trial rather than
*in* trial.

[10] On October 10, 2013, Defendant filed a motion to
disqualify the UST, based on the alleged ethics violations raised
previously, and an ex parte request to "stay discovery" until the
court had ruled on it. The request to stay discovery was denied
on October 10, 2013. See docket no. 42. The motion to disqualify
the UST was denied on November 14, 2013.

*12-4178.Decision*                     -13-

personal reasons and make no effort to accommodate litigation the attorney has undertaken. <u>See</u> docket no. 39.

### 4. The UST's Motion for Terminating Sanctions

On September 5, 2013, the UST filed the motion for fees and terminating sanctions. <u>See</u> docket no. 32. The UST argued that Defendant's conduct was egregious and warranted terminating sanctions under Civil Rule 37(b) because of his failure to comply with the July 24 Order. The UST also sought an award of $1,117.50 in costs in connection with the motion to compel.

Defendant's opposition argued that terminating sanctions were not appropriate under Civil Rule 37(b) because Defendant had not "failed to comply" with a discovery order because he had filed a motion to set it aside. Defendant also argued that attorney's fees were not warranted under Civil Rule 37(a)(5)(A) because the UST had not negotiated in good faith and Van Dusen's actions were substantially justified. Standing the world on its head, the opposition also claimed that unless the UST could prove that Defendant's conduct fell within one of the exceptions to discharge in § 727, the UST was "not entitled to the discovery demanded." <u>See</u> docket no. 38.

On October 10, 2013, the court heard argument on the motion to vacate and the motion for terminating sanctions and took both matters under submission.

### III. Discussion

#### A. Terminating Sanctions under Civil Rule 37(b)

The UST seeks terminating sanctions for Defendant's failure to comply with the July 24 Order.

Civil Rule 37(b), applicable here by Bankruptcy Rule 7037,

*12-4178.Decision*                    -14-

provides in relevant part:

> If a party ... fails to obey an order to provide or permit discovery, ... the court where the action is pending may issue further just orders. They may include ... striking pleadings in whole or in part [and] rendering a default judgment against the defaulting party.

Fed.R.Civ.P. 37(b)(2)(A)(iii) and (vi).

The court first disposes of Defendant's argument that the July 24 Order could be disregarded with impunity because the discovery was abusive.

This argument is completely without merit. Belief that the July 24 Order was improper does not relieve Defendant of the duty to obey it. Defendant's choices were to appeal from the July 24 Order or comply with it. See Chapman v. Pacific Telephone and Telegraph Co., 613 F.2d 193, 197 (9th Cir. 1979) (citing Maness v. Meyers, 419 U.S. 449 (1975) for the basic proposition that the proper course of action, unless and until a trial court's order is invalidated by an appellate court, is to comply and cite the order as reversible error should an adverse judgment result).

**B. Relief under Civil Rule 60(b)(1) or Civil Rule 60(b)(6)**

Defendant also argues that terminating sanctions under Civil Rule 37(b) are not available because Defendant did not "fail to comply" with a discovery order because he had moved to vacate it under Civil Rule 60(b)(1) or 60(b)(6). In concept, a Civil Rule 60(b) motion is a permissible avenue to seek to vacate an order but the record in this case does not support granting relief under either section.

**1. Civil Rule 60(b)(1) - Excusable Neglect**

Under Civil Rule 60(b)(1), the court may relieve a party or

*12-4178.Decision*                    -15-

a party's legal representative from a final order for "mistake, inadvertence, surprise, or excusable neglect." Whether neglect is excusable is an equitable determination, taking account of all relevant circumstances surrounding the party's omission including the danger of prejudice, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the moving party, and whether the moving party acted in good faith. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). Pioneer also points out that an attorney's negligence is ordinarily binding on her client. Id. at 396-97 (noting parties are responsible for the acts and omissions of their chosen counsel); see also Casey v. Albertson's, Inc., 362 F.3d 1254, 1260 (9th Cir. 2004) (inexperienced attorney's malpractice did not constitute excusable neglect); CEP Emery Tech Investors LLC v. JP Morgan Chase Bank, N.A., 2011 WL 1226028 (N.D. Cal. 2011) (distinguishing Casey based on attorney's medical disability).

Applying the Pioneer factors to the record in this case, relief under Civil Rule 60(b)(1) is not appropriate.

First, while Defendant's counsel claims she forgot to calendar the date and time of the July 24 hearing, she also describes making an intentional decision to focus on dealing with her criminal trial rather than this case. She can not now avoid the consequences of having made that conscious choice.

Second, the court notes that prejudice from delay may be assumed unless the moving party provides a non-frivolous explanation for it. See Laurino, M.D. v. Syringa Gen. Hosp., 279

*12-4178.Decision*                    -16-

F.3d 750, 753 (9th Cir. 2002) (presumption of prejudice from unexplained failure to prosecute rebutted by affidavit giving non-frivolous explanation for delay). Defendant's excuse for not providing complete and timely discovery responses and counsel's excuse for not responding to the UST's motion to compel do not rebut this presumption of prejudice.

The court also notes that while there was not a lengthy delay between the July 24 Order and the motion to vacate, there has been serious delay by this Defendant in this case and in his prior cases which has impacted the UST, the chapter 7 trustee, Defendant's creditors, the court, and the integrity of the system as a whole.[11] In this context, Defendant and his counsel's delay is both unreasonable and prejudicial. The UST's discovery was served in April 2013 and the response date was extend to August 21, 2013 by the July 24 Order. As of the date of this decision, no documents have been produced and the amended interrogatory answers have not been served. There is nothing in this record to indicate this sort of delay is justified.

Third, while counsel may not have had control over the scheduling of her criminal trial, she did have control over calendaring the July 24 hearing and the filing deadlines and could have arranged for an alternative hearing date or alternative counsel to assist her. She could also have simply produced the discovery. See C.K.S. Eng'rs, Inc. v. White Mountain

---

[11] There is also a legitimate concern regarding the preservation of relevant evidence and the passage of time only heightens this concern. The failure or refusal to produce documents is thus a serious matter.

*12-4178.Decision*                    -17-

1  <u>Gypsum Co.</u>, 726 F.2d 1202 (7th Cir. 1984) (providing some
2  discovery responses may be seen as measure of good faith in 60(b)
3  context). This good faith effort to comply is utterly lacking
4  here as Defendant's counsel's explanation shows: "Feusier WAS
5  going to provide documents, but his counsel's criminal trial
6  intervened." And when counsel was no longer "captive to her
7  criminal trial," she was "forced to spend time moving to set
8  aside the motion to compel," rather than using this time to
9  finish gathering documents for production. "Plaintiff counsel's
10 own actions actually diverted defense counsel from producing
11 documents, although Plaintiff['s] counsel indignantly proclaims
12 that the documents she rejected *still* have not been produced."
13 <u>See</u> docket no. 40, p. 2:5-12.[12]

## 2. Civil Rule 60(b)(6) - Any Other Reason

15 Defendant also argued that relief under Civil Rule 60(b)(6)
16 was appropriate in order to be "fair" to Defendant. This argument
17 is also without merit.

18 Under Civil Rule 60(b)(6), the court may relieve a party or
19 his legal representative from a final order for "any other reason
20 that justifies relief." Relief under Civil Rule 60(b)(6) has to
21 be based on some reason other than the five reasons preceding it
22 in subsections (1)-(5). <u>Lyon v. Agusta S.P.A.</u>, 252 F.3d 1078,

24   [12] There is no evidence in the record that Defendant
25 produced any documents and the UST rejected them. Thus, in
   claiming that the UST "rejected" offered documents, the court
26 assumes Van Dusen is referring to the fact that Defendant offered
   to produce certain documents for a one year period and the UST
27 insisted on receiving documents for the six year period it
   defined, as explained in UST's counsel's May 20, 2013 email to
28 Van Dusen. <u>See</u> docket no. 40, ex. B-1.

*12-4178.Decision*          -18-

1088 (9th Cir. 2001).

Relief under Civil Rule 60(b)(6) is to be used sparingly and only to prevent manifest injustice. U.S. v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993). The court should not grant relief unless extraordinary circumstances prevent a party from taking timely action to prevent or correct an erroneous judgment. Id.

An attorney's actions are generally chargeable to her client and ordinarily do not constitute extraordinary circumstances warranting relief under Civil Rule 60(b)(6). Pioneer, at 396-97. There is an exception to this general rule when an "attorney's negligence is so gross that it is inexcusable" such that the client is "virtually abandoned." See Comty. Dental Servs. v. Tani, 282 F.3d 1164 (9th Cir. 2002) (allowing default judgment to be set aside where grossly negligent attorney "virtually abandoned" client and nothing in record showed culpable conduct by client).

None of the factors that supported the outcome in Tani are present here. First, there is culpable conduct by Defendant as the history of his bankruptcy filings, his discovery responses, and his failure to produce a single page of discovery shows. Second, Defendant is not complaining that his counsel abandoned him. On the contrary, she is still vigorously litigating on his behalf.

Based on the record in this case, the court concludes that there is no basis to vacate the July 24 Order under Civil Rule 60(b)(1) or Civil Rule 60(b)(6). Accordingly, the court may proceed to consider the UST's request for terminating sanctions

Case: 12-04178   Doc# 61   Filed: 12/10/13   Entered: 12/10/13 17:31:34   Page 19 of
25

1  under Civil Rule 37(b).

2  **C. Terminating Sanctions are Warranted**

3  Civil Rule 37(b)(2) specifically provides for terminating

4  sanctions – by striking pleadings or by rendering a default

5  judgment against the disobedient party. See G-K Properties v.

6  Redevelopment Agency of City of San Jose, 577 F.2d 645, 647 (9th

7  Cir. 1978)(approving trial court's dismissal with prejudice for

8  failure to comply with discovery orders, noting such orders are

9  encouraged because litigants who are willful in halting the

10 discovery process act in opposition to the authority of the court

11 and cause impermissible prejudice to their opponents); Malone v.

12 U.S. Postal Service, 833 F.2d 128 (9th Cir. 1987) (dismissal is

13 harsh penalty to be imposed only in extreme circumstances).

14 In order to warrant a terminating sanction, the party's

15 violations of the court's orders must be due to willfulness, bad

16 faith, or fault. Fjelstad v. American Honda Motor Co., Inc., 762

17 F.2d 1334, 1341 (9th Cir. 1985) (litigant acts willfully if it

18 engages in disobedient conduct not shown to be outside its

19 control; disobedient conduct means deliberate malfeasance not

20 mere inadvertence). As the previous discussion shows, Defendant

21 and his counsel have acted willfully and not through mere

22 inadvertence; nothing indicates responding to discovery was in

23 fact outside of their control.

24 The Ninth Circuit has identified five factors that a court

25 must consider before dismissing a case or declaring a default as

26 a sanction: (1) the public's interest in expeditious resolution

27 of litigation; (2) the court's need to manage its docket; (3) the

28 risk of prejudice to the other party; (4) the public policy

*12-4178.Decision*                    -20-

favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990) (citing Malone, 833 F.2d at 130); Dreith v. Nu Image, Inc., 648 F.3d 779, 788 (9th Cir. 2011). These factors are not to be applied in a mechanical fashion; they are not a series of conditions precedent before the court can do anything. Valley Eng'rs Inc. v. Elec. Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998).

Applying these factors here, the ineluctable conclusion is that the UST's motion must be granted.

## 1. Public Interest and Docket Management

The UST argues that the first two factors are met because Defendant's delay has impeded the prompt resolution of the case - contrary to the public interest - and demonstrates a lack of respect for the court's need to manage its docket. The UST is correct. The public interest in expeditious resolution of litigation and the court's interest in managing its dockets are best served by striking Defendant's answer. Defendant's dilatory conduct in this adversary proceeding and his history of filings demonstrates his lack of respect for the court and the bankruptcy process. Since 2007, Defendant has filed seven cases - none of them have been appropriately handled or actively prosecuted and in none of them did he provide the complete, candid disclosures every debtor is required to make. The court, the chapter 13 trustee, the chapter 7 trustee, the UST, and Defendant's creditors have all struggled to deal with these cases and have received no cooperation from Defendant at any step in the process. This sort of activity also unfairly diverts the court's

*12-4178.Decision*                    -21-

attention from other pending cases.

## 2. Prejudice and Decisions on the Merits

The question of prejudice focuses on whether Defendant's actions have interfered with preparation for trial, with the ability to go to trial and reach a decision on the merits. Adriana, 913 F.2d at 1412. The refusal to respond to reasonable discovery - based on the groundless excuses offered here - has certainly interfered with the UST's ability to prepare for trial, and in the context of this case, is preventing the UST from being able to prove its case.

The UST also argues that it has had to expend its limited resources filing discovery motions because of Defendant's conduct, not because of any substantive issue in the case. This is in itself prejudicial to the UST's office. Malone, 833 F.2d at 131.

The UST acknowledges that the public policy of deciding a case on its merits will not be met here, but that is always the case in the context of terminating sanctions. The court notes that Defendant's conduct has ensured that we will never reach an accurate or fair trial on the merits.

## 3. Availability of Less Drastic Sanctions

A judgment denying Defendant a discharge is the most drastic sanction available. Accordingly, the court is to consider whether less drastic sanctions are available or appropriate. There are sub-parts to this factor: whether the court has considered lesser sanctions, whether it has tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. Conn. Genl. Life Ins. Co. v. New Images of Beverly

*12-4178.Decision*                    -22-

1 <u>Hills</u>, 482 F.3d 1091, 1096 (9th Cir. 2007).

2     First, as explained above, egregious circumstances exist
3 here. In addition, the court has considered whether a less
4 drastic sanction would be appropriate and concludes there is no
5 adequate less drastic sanction in the context of this case.

6     Second, the July 24 Order explicitly warned Defendant and
7 his counsel that the court would consider terminating sanctions
8 if Defendant failed to comply with the July 24 Order. <u>See</u> <u>Malone</u>,
9 833 F.2d at 132 (noting that case law suggests that warning that
10 failure to obey a court order will result in dismissal can
11 suffice to meet the consideration of alternatives requirement,
12 collecting cases).

13     Third, what is most critical for case-dispositive sanctions,
14 regarding risk of prejudice and availability of less drastic
15 sanctions, is whether the "discovery violations threaten to
16 interfere with the rightful decision of the case." <u>Valley Eng'rs</u>,
17 158 F.3d at 1057. That is the situation confronting the court in
18 this case and it is what compels the outcome. Defendant's
19 discovery violations make it impossible to trust that the UST or
20 the court will ever have access to the true facts and there is
21 nothing to indicate a lesser sanction would be of any use. In
22 fact, any lesser sanction would only serve to reward Defendant
23 for his years of abusing the bankruptcy process. <u>Anheuser-Busch,</u>
24 <u>Inc. v. Natural Beverage Distribs.</u>, 69 F.3d 337, 352 (9th Cir.
25 1995) (appropriate to reject lesser sanctions where the court
26 anticipates continued deceptive misconduct). For all of these
27 reasons, terminating sanctions are appropriate.

28     **D. Attorney's Fees are Warranted**

*12-4178.Decision*                    -23-

Civil Rule 37(a)(5)(A) provides that if a motion to compel discovery is granted,

> [T]he court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order payment if:
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's non-disclosure was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(5)(A).

First, Defendant's conduct necessitated the motion to compel and it appears his attorney advised this conduct which means the court *must* order Defendant or his attorney to pay the UST's reasonable expenses in making the motion. Defendant contends that the exceptions to this mandate apply here. Defendant is incorrect. The record is clear that the UST negotiated in good faith before filing the motion to compel. See docket no. 40, ex. B-1 (May 20, 2013 email from UST's counsel to Defendant's counsel explaining why the discovery was appropriate and why Defendant needed to respond.) The record also shows that Defendant's response to the discovery was not substantially justified. Finally, Defendant is also incorrect in claiming that other circumstances make an award of expenses unjust. There are no such "other circumstances" here.

The hours spent by the UST are reasonable and the work was done in an efficient fashion. The amount sought by the UST is exceedingly modest because of the low hourly rate the UST used in making its calculation. The court awards the fees as sought

*12-4178.Decision*                    -24-

payable jointly by Defendant and his counsel.

**IV. Conclusion**

    For the foregoing reasons, Defendant's answer will be stricken and his default entered. In addition, he will be barred from filing another case for five years. The court requests that the UST submit an order so providing and providing that the fees requested by the UST are to be paid within 60 days of the entry of such order.

        \* \* \*   **End of Memorandum Decision**   \* \* \*

Case: 12-04178   Doc# 61   Filed: 12/10/13   Entered: 12/10/13 17:31:34   Page 25 of 25